Good morning and welcome. First case today is Greg Kerr v. General Motors. Ms. Longoria Green, whenever you're ready. Good morning and may it please the court. Carmen Longoria Green for Appellant General Motors. I would like to reserve two minutes for rebuttal. Go ahead. The district court made two errors, either of which independently warrants reversal. First, by refusing to enforce... Just a tad. Thank you. By refusing to enforce the delegation clause, the district court misapplied this court's decision in Zerpulli v. Midland funding and aligned itself with the minority side of an entrenched circuit split. Then, after refusing to enforce the delegation clause, the district court decided the arbitrability question itself. That's when it made its second error by not compelling arbitration pursuant to equitable estoppel. With this court's permission, I'll turn to the issue of the delegation clause first. Because GM is not a party to the purchase agreement, under what theory do you want to invoke the... Equitable estoppel, Your Honor. And pursuant to this court's decision in Zerpulli, the analysis that the district court should have applied when it was determining whether to enforce the delegation clause was to first determine whether there was a clear and unmistakable showing that the party to the contract intended for arbitrability decisions to be made by the arbitrator. That was done here. We can look at the language that says that the arbitrability of a claim, the scope of the arbitration provision, and the interpretation of the those determinations necessarily mean the arbitrator should decide whether a third party to the contract, here GM, can use equitable... A non-party, right? Not a third party, a non-party. A non-party to the contract, a non-signatory, can use equitable estoppel to enforce the contract. Zerpulli looked at the delegation clause itself without assessing whether an entity was named on the contract at all, and said when there were terms such as arbitrability is for the arbitrator to decide, that is all the court does. It looks, sees that term is in the contract, and then it compels it to arbitration for the arbitrator to make the decision in the first instance about whether equitable estoppel allows, or in that case, whether the assignment allowed the non-party to the contract to enforce the contract. The district court did not... I just, because I want to make sure I got this done, you're not arguing that there's an interpretation of the sales agreement that includes GM. Your argument is the sales agreement only covers the purchaser and the dealership. We are not pursuing an argument that GM is named in the purchase agreement. There are other third parties that are named in the purchase agreement, but GM is not one of them, and we're not Flesh that out. What do you mean by that? How does the equitable estoppel argument work here? Yes, so the delegation clause says that arbitrability goes to the arbitrator. Arbitrability, we know from cases like Frentis Center, and the Sixth Circuit's cases, in the Domino's Pizza case, and in Becker and Swiger, arbitrability necessarily means that the third, that whether a third party or non-party to a contract can enforce the arbitration provision. So because we have a delegation clause that says these arbitrability determinations are made by the arbitrator, necessarily this goes straight to the arbitrator to do the equitable estoppel analysis in the first instance. But in Zerpoli, the non-signatory was an assignee of the contract, right? GM's not an assignee of this purchase agreement. Yes, your honor. Isn't that a material difference? I do not believe it is, your honor. I think I would call that a distinction without a difference, and I would look at how the Zerpoli court walked through how the FAA applies to cases like this, and it invoked the severability doctrine. The severability doctrine was quite critical. A doctrine just means the arbitration provision is a separate contract, and the delegation provision, those are a separate contract. And in there, the non-signatory said, I'm an assignee, I get to invoke this. And the court noted, well, if you're an assignee and able to invoke the contract, that would work at both the delegation clause level and at the arbitration provision level. And the FAA tells us, well, we treat the delegation clause just as its own separate contract. And the court noted, if I did the analysis to determine whether you are a proper assignee when determining whether to invoke the delegation clause, well, let's say I determine you are a proper assignee. Then I enforce the delegation clause. I send it to the arbitrator for what? At that point, the arbitrator's job would be pursuant to the delegation clause to determine whether the assignee was a valid assignee. But that was the very analysis that the court would have already performed when determining whether to invoke the delegation clause. And when the court walked through how it had been put in that conundrum in a rock and a hard place, it said it would be performative for it to perform the analysis about whether this particular non-party could invoke the delegation clause just for that very same analysis to be performed by the arbitrator once they choose to enforce the delegation clause. And the court refused to do that. That step-by-step analysis using the severability clause is something that the district court did not do here. It just went straight to looking to see whether GM was named in the contract. The purchase agreement was governed by which state's law? I'm sorry, extent is Zerpulli even applicable here? Zerpulli is applicable because whether to enforce a delegation clause is a matter of federal substantive law. And we can look at the Supreme Court's Mitsubishi decision for that. And also the Zerpulli case in which this court, it was a Pennsylvania contract in that case governed by Pennsylvania law, but it didn't cite Pennsylvania cases when determining whether to enforce the delegation clause. Instead, it looked at federal cases, interpreting the FAA, specifically the Renta Center case, the Buckeye case, which are discussing the severability doctrine. And it determined that because of that, it had to enforce. Texas law, when you look at this, does have two types of estoppel. Yes. There's equitable estoppel and direct benefits estoppel. There's a third one called misconduct estoppel. We're not, that's not relevant here. Direct benefits estoppel. You have a signator suing a non-signator and you have, it arises by reference to the agreement. Why would, is direct benefits estoppel applicable here or not applicable here? It is only applicable if the court chooses not to enforce the delegation clause. If the court chooses that GM does not have the ability to enforce the delegation clause, which would be different from this court's decision in Zerpoli and would put this court. Let's assume that is the case for the moment without coming to a conclusion. So then why would direct benefits not be an issue that needed to be decided by judge Andrews? If you're not enforcing the delegation clause, it would be for the court to decide. And then we would turn to the direct benefits estoppel analysis and the intertwined claims estoppel analysis under Texas law. How, no matter how hard I look at that complaint, I don't see any, I don't see how Mr. Knowles is somehow claiming the benefit of the purchase agreement while also trying to avoid the arbitration provision. How do you tie his claims against GM somehow back to the purchase agreement? Yes, your honor. We can see then his complaint against GM. He doesn't ever have interactions with GM itself. You can look at paragraphs 41, 44 of the first amendment complaint. He says that he bought the car because he went to the a salesperson at the dealership and the dealership provided him with materials. And on that basis, he purchased the car and his claims are grounded in fraudulent inducement to contract and that he was told things about the car. It has a bad fuel pump. So you would think about the implied warranty of merchantability. Is that right? Yes, that is one of his claims. Right. But what, I mean, the purchase agreement disclaims any implied warranties. So is he relying on GM's independent warranty or? He's relying on a Texas statute, section 2.314 of the commercial code. And that statute says that every time you are purchasing something from a merchant who usually sells that type of item, which would apply here, there is an implied warranty that runs with the contract. We can look at the Leonard Holmes case, which was also an implied contract case. And there the court used direct benefits estoppel to compel a non-signatory to arbitrate because the court said, when you're using an implied warranty, that's really a claim of rising in contract. And because it's a rising in contract, you are seeking to derive a benefit from the contract. And you can look at cases such as case, which says that look, can you, can you disclaim an implied warranty under Texas law? Your honor, the warranty of merchantability, I should say, you can, you can attempt to, there are, there are restrictions on that, your honor. And the contract does not disclaim warranties as to GM. It disclaims warranties as to the dealership. It says specifically that it is not commenting or making or making any kind of limitation one way or the other on the manufacturer warranties. So, so if they're relying on manufacturer warranties, they're not relying on warranties in the purchase agreement. They are your honor, because of the statute that the name and their complaint, their complaint says section 2.314. And that statute says, well, it is in a, it rises automatically when you purchase a good from a merchant who typically sells that type of good. And so without his purchase agreement, he wouldn't have an implied warranty. Texas doesn't have free floating implied warranties that pop up out of nowhere. You have to have your purchase agreement or contract with the, with the dealer here for him to have the implied warranty. But the implied warranty claim that arises under that Texas statute runs against the dealer or against the manufacturer? It runs against both. You can look at nobility homes of Texas versus Shivers. That's at five, five, seven Southwest, second 77. That's a 1977 decision. Do you want to give me that set again? Five, five, seven. Five, five, seven Southwest, second 77. It is a Texas Supreme court decision from 1977. And that's a mobile home case. The plaintiff purchased a mobile home from a dealer and then pursued under the statute and implied warranty claim against the manufacturer. And the Texas Supreme court said that that was allowed direct benefits. A stopple is the most simple way to demonstrate that the implied warranty claim compels would, would compel arbitration here under the Leonard Holmes case, this Texas Supreme court, which is a 2023 Texas Supreme court case. One of the most recent descriptions of equitable estoppel in Texas law, it says that once you have one claim that is clearly arbitrable due to equitable estoppel, the other claims must be subject to arbitration as well. As long as the arbitration agreement is broad enough to cover it. And certainly it is here because the arbitration agreement here covers claims about the condition of the case that you're citing. And I think there's another one that we found called man engines followed that, that says you don't need privity in order to sue the manufacturer. Is that correct? You don't need property under Texas law now. Okay. Your friend on the other side says if we allow arbitrability under the delegation clause, we're opening up a precedent where third party can step into any agreement in the nation where corporation like GM happens to be a party. And that can't possibly be the best interpretation of the FAA. So what's your best response as to why there's a limit to the parade of horribles that they are concerned about? My best response would be the Supreme court's decision in Henry shine. That's a very similar policy concerns, Henry shine, and address the wholly groundless exception to that. Some circuits had, had, uh, developed in response to delegation clauses in that, in, uh, when they're using the wholly groundless exception, they were saying, we will look and see whether this person's claim that the case is arbitrable is wholly groundless or not. And if the court thought it was wholly groundless, it wouldn't enforce the delegation clause. And the Supreme court said that was wrong because it was writing an exception into the FAA that does not exist. And one of the key arguments and both in the briefing and an oral argument in the Henry shine case was if you get rid of the wholly groundless exception, you will have people who have no basis whatsoever to compel arbitration, just trying to enforce delegation clauses. And the Supreme court's response was, was twofold. One, it stated that it thought that this concern was a bit overblown because it reviewed the circuits and it reviewed the case law. And it saw that the wholly groundless, uh, provision was hardly ever being used because people weren't as a general matter, going through the costs and expense of trying to enforce a delegation clause that simply was not applicable. And second, that arbitrators are presumed to be competent, to apply the law correctly. And it was presumed that the arbitrators have a way to quickly deal with frivolous claims that a case is subject to arbitration. And it also pointed out that arbitrators have sanctions and they can impose sanctions up into including attorney's fees and arbitration costs in order to, um, um, get people not to bring such claims. And there's also the possibility of rule 11 sanctions on the backend after the arbitrator has sent it back to court. At that point, the plaintiff who was wrongly required to go through arbitration could seek rule 11 sanctions. Okay. Thanks. We'll hear you back on. Mr. Wu. Yeah. Good morning, Your Honor. May it please the court. Brian Rufer, appellee, uh, Robert Knowles. We won the low and we asked the court to affirm. The appeal turns on one undisputed fact. Robert Knowles never agreed to, to arbitrate anything with General Motors. GM was not a part of the agreement and under the Supreme Court's repeated instruction, that can, that arbitration is a matter of consent. This is dispositive. GM asked the court to send the question of whether Knowles agreed to arbitrate with GM to the arbitrator, but before an arbitration, before a delegation clause can offer operate, a court must satisfy itself that the parties before it actually formed an agreement to arbitrate a principle articulated by the Supreme Court and first options versus Kaplan and Granite versus Teamsters with this, with this, uh, agreement that it has the first part. It looks like I have it. I don't have page two. You went through the agreement and there's a couple of things I'm going to stop you when you're, when you're reading through. I'm talking about the arbitration provision. Okay. It says by signing below, you agree that this is between Gruner Motors and Knowles. Yes. You want me to read the arbitration clause? Go ahead. Any claim or dispute, whether in contract court statute or otherwise, including interpretation and scope, the arbitration provision, the arbitrability of the claim or dispute between you and us or employees, agents, successor, or signs, which arises out or relates to your credit application purchase or condition of the vehicle, this contract or any resulting transaction or relationship, including any such relationship with third parties, including any such relationship with third parties who do not sign this agreement. What does that mean? That means that, so I would put it this way. The agreement is between you and us, us meaning Gruner Motors, you meaning Knowles. Why does us mean Gruner Motors? Because it, because Gruner Motors is the, is the signatory to the, to the agreement. And there is, but I mean, there's an alternative interpretation, which is being advanced, I think by GM that is then evidenced by the judge Ambrose getting to, which includes third parties. So couldn't us alternatively mean a broader set of individuals? What I heard from counsel from GM is that they're, they're not standing on the contract on as a party to the contract. And let me, let me go through that provision. I'm not talking about parties to the contract as opposed to understanding what the contract means. Yeah. But you can return to judge Ambrose question about third parties. Okay. So, so they're, they're, they're not saying that they're employees, agents, successor or assigns. They're not saying that they are us. They're saying that, that they can invoke equitable estoppel as to this particular clause, it comes from a rising. So what it's saying is the universe of claims between you and us, we're saying that they include certain things such as credit applications, such as a condition of the car and such as these issues that arise in third parties. So if we sue Bruner motors, then Bruner motors can say, well, look you know, all of these things are subject to the arbitration agreement. The arbitration clause is broad, but it covers only issues that relate to our client and Bruner motors. That is our position. And because you're saying it's all about consent and formation. Yes. But can't you turn every interpretive question about the meaning of a delegation clause into a question of consent? I mean, you could always recast, is there a contract in where the parties to the contract and avoid the question of arbitrability, right? I mean, because you're getting pretty deep into the interpretation of the contract. This clause means that that's why this is subject to this. And we know all of that basically for common law contract principles. You may well be right, but that starts to sound a bit like arbitrability doesn't it? And that's, I think why GM says that's under the delegation clause and you might prevail, but you have to do so in a different forum. I think, I think there was a simple answer to that, your honor, which is, which is they're not a signatory of the agreement. The agreement doesn't reference GM at all. And so, and they're not a, they're not a sign. So I understand your position that only if you're a signatory to an agreement and only if the agreement references a particular party, can that party ever enforce the arbitration agreement that can't. We're not saying that, but, but the, the, why do we, so, but the, the, the arbitration agreements under the FAA must be grounded in the arbitration agreement itself and the text of the arbitration agreement. And so under the arbitration agreement, you have, you've identified the parties and you have a clause that says our employees, agents, successors, and assigns. Now they're, they're not saying that there are any one of, you're saying those would be examples, several examples of non-parties that would, who can enforce. Yes. So in the Zerpoli case, for example, the party that, which is a non-signatory, but Midland wasn't, was a direct assignee of the contract from the other part of the, from the signatory party. The dispute there is over whether the whether Midland had some kind of licensing issue that might, that might make it revoke the assignment contract. Aside from Zerpoli, why doesn't the Texas statute and equitable estoppel doctrine let GM come in to this relationship and enforce the arbitration provision? Well, as your honors recited of the, there's usually a direct benefits estoppel, intertwined estoppel, but neither one, neither one applies here because we're not suing on the contract at all. So there's no reference to the purchase agreement in, in our, in our complaint. There is our, our allegations are, your friend says Texas precedent presumes that when you assert an implied estoppel warranty claim, you are suing on contract. That's, that's, that's not, I would urge the court to, to, to read Leonard Holmes, which doesn't, isn't that broad. Leonard Holmes is a case where the signatory to the agreement, Leonard Holmes is suing on a, the non-signatory sued Leonard Holmes, Leonard Holmes, which is the signatory to the agreement is trying to enforce the arbitration agreement. So that's, that's a completely different situation than, than here, where a non-signatory is trying to enforce an arbitration agreement. In Leonard Holmes, the agreement is recorded and says it runs with the home. It's a, it's a, it's a purchase and sale agreement of a home. The, the plaintiff complained about mold, sued the, the home manufacturer, but the plaintiff was second, bought the home secondhand from the original owner. So. But there's, okay. So in this one, there is a arguably defective fuel pump. Yes. And you're saying that there is an implied warranty among other things, a merchantability with respect to that. Yes. And you're saying that you can sue in court with respect to that because the arbitration provision doesn't apply. And I'm looking at this arbitration provision and the language in the parenthetical toward the end of what you read. I just don't understand quite what that is meant to do, including any such relationship with third parties who do not sign this contract. And then immediately after that shell at either one's election be resolved by neutral binding arbitration and not by the court action. Again, I think if we were to have sued Bruno Motors along with GM under the same theory, I think Brunner motors can say, based on this agreement, based on this clause, we can, we can compel the matter to arbitration. But that's not the case. The third party arguably is GM did cause GM did not sign this document. If it, one argument might be that, okay, even a suit against GM should be arbitrated. Maybe, or something else. What is the something else that you think that means so that the first interpretation would not be correct? The something else is if there was an issue with the fuel pump and we decide to sue Brunner motors, let's say we set, well, let's say, well, this is important. This, this is how we're interpreting the clause, which is that this is the universe of stuff that we can sue Brunner motors under, because if you look at the clause, it's any claim or dispute between you and us or our employees, agents, successors in the science. So those are the parties to the arbitration agreement itself. And then from that there's a rising, this third party clause comes from a rising, which are sort of the universe of claims that arbitration clause covers, but it doesn't change that the party it's the parties themselves are Brunner, Brunner motors, their agents, assignees, et cetera. And, and the consumer change it. I mean, I, I, if they, if they drafted it differently, then yes, they didn't draft it. What, what does, what, what is the intent of that parenthetical? The intent of the parenthetical, for example, let me just flesh this out. For example, in our complaint, we, let's say we, instead of general motors, we sued Brunner, Brunner, Brunner motors. We say Brunner motors, the salesperson should have disclosed this fuel pump issue. They should have known about it. Then they could say, well, look, even though the fuel pump issue is a, is a GM issue. It's it's, you know, GM, GM, it's a manufacturing defect from GM. And your complaint says it's manufacturing defect from GM you're suing us. And that because that's a third party issue covered by the arbitration clause, we're going to sweep that into our arbitration clause and move it to arbitration. So again, this is the universe of stuff that's covered by the arbitration clause itself. But if they wanted to draft a clause that covers different parties, they should use a different language that, that would that. What does an equitable estoppel work here? Equitable estoppel? Well, or direct benefits estoppel? Well, again, the there's, there's, we don't, we don't sue on the contract. There's no relationship between the contract and our claims. In Leonard Holmes, the, the, it's the non-part, it's the party to the contract that's suing because remember the, the, the equitable estoppel is foremost about the, the not letting a party take, take advantage of the benefits of the contract while avoiding the detriments of the contract, avoiding the burdens of the contract. We're not trying to avoid the burdens of the contract. The contract itself disclaims warranty implied in express warranties. So we don't think that this contract has anything to and the fact that we're not taking advantage of the contract, we don't believe it applies. I would also say that the, to the extent that the district court look at this, this is an equitable issue under abusive discretion standard. They're not saying that the, the district court applied the wrong test there. The, the district court, they claimed, did you made it made the wrong determination? Was there any mention before the district court of direct benefits estoppel? Yes. So the last couple of pages of the order is about Leonard Holmes is about, about, about these Texas cases and the district court looked at these cases, weigh the issues and determine that primarily equitable estoppel, right? Equitable. Well, equitable estoppel, but Leonard Holmes, the case that they rely on the below and, and here is a direct benefits estoppel case and it says direct benefits estoppel in the case. So what'd you say the standard of review applies to what aspect of the district court's decision? I would, the, the abusive discretion standard applies to the equitable estoppel determination and the NOVA would apply to the arbitration agreement determination. Is the implied warranty of merchantability a contract claim or a tort claim? It is a tort claim. Now, Texas code, I think just take a look here. 2.314 seems to imply it's a contract claim. And I've always thought of implied warranty of merchantability being a contract claim. I don't, I don't think it matters here. But it isn't my point. It isn't the purchase agreement that we're talking about here. The only contract that exists that that Noel signed. If it is a contract, if it's an implied in fact contract between the, the plaintiff and GM, then that's one thing. If, if there was a, there's no contract that creates a, a implied warranty between GM and, and our, and the plaintiff, then that's an, that's an issue for a motion to dismiss. Let's go back to the, if it is a contract claim and my gut reaction is that implied warranty of merchantability is a contract claim, but maybe I'm wrong. The only contract that could apply to would be this purchase agreement. I don't know. Is there any other contract that Noel's signed? Uh, not with GM as far as I'm aware. Um, that's not in the, yeah, it's not in the record. Um, but, uh, you know, again, I'll, I'll go back to the disclaimer warranty. So then take, let's take it to the next step. Might not the hook, the direct benefits estoppel where a signatory is suing a non-signatory Noel's is suing GM. And it arises by reference to that particular or it is relates to that agreement in some way, shape or form. I think we would have had to allege it in the complaint, your honor. And we wouldn't have alleged this, this, uh, purchase agreement in the complaint because the purchase agreement itself, even today, you're not relying on direct benefits. No, because the, the, the purchase agreement itself disclaims, uh, implied warranties from the manufacturer. So we wouldn't, you know, like that's just not a valid basis for us to, to allege the claim. So your argument that this is not arbitrable is, is, is what, what's the theme? It's, uh, we would, we would say it's, there's no contract formed between the parties. So, and, and formation is the threshold issue before, before you get to enforce a delegation clause, we can see that the delegation clauses is broadly enforceable under Henry shine. But before you get to that, you have to have parties that have, that have agreed to, to, to, to the delegation clause in some way. Otherwise, you know, what, what prevents a repair shop that our, our client took his car to, to, uh, to try to enforce this Bruno Mars clause saying, oh, well, you know, you say we damaged your car from the repair, but you entered into this agreement and we're going to invoke it. It has to include a party or a non-party that maybe Texas law sweeps in some house. We'll have to look at these cases. Do you have anything to say about nobility homes? That was the other one, your friend mentioned from 1977. Uh, again, that, uh, that, that doesn't, I don't have it offhand, but I don't think it applies. It does follow up man engines, which talks about, uh, you don't need a privity to sue the manufacturer. All right. I think we do address it in the brief. Okay. Thank you. Thank you. At some point, could you tell us what allegations in the complaint somehow affect the, the, the, the contract, the purchase agreement? Yes, your honor. The allegations in the complaint that affect the purchase agreement show that they, he purchased the car from the dealership, and then he has an implied warranty that runs through that contract that he purchased it. That's a direct benefits estoppel argument. There's also an intertwined claims estoppel, which looks at it a bit differently. And my friend on the other side spent a lot of time on direct benefits. I'd like to address intertwined. I'm looking at count four, which is the implied warranty claim. Um, I just don't see any reference to the contract or to the dealer. Um, I don't know how you tie it back to the, I'm inviting you to show us how you tie the implied warranty claim back to this contract. It is not necessary under Texas law for the complaint to directly mention the contract, say in that count for, for the applied warranty, you can look to the Merrill Lynch case cited in the briefs. Um, it's a 2007 case from the Texas Supreme court. And it says that the substance of a claim is what is important. And that's because equitable estoppel is meant to respond to artful pleading that plaintiffs are attempting to sue maybe a principal or an agent of the signatory in order to avoid the arbitration agreements. So I'm looking at the substance of the implied warranty claim, and it's all about the alleged defect, you know, that GM is responsible for. It has nothing to do with the seller or the whole purchase transaction. It's about the thing that he bought that he says was defective. Right. But the key is your honor, he wouldn't have that implied warranty without the contract under Texas law. And then you also have intertwined claims estoppel, and that doesn't need as close of a relationship with the contract as direct benefits estoppel. And I think the fifth circuit's decision in Hayes is really useful. Their Hayes said that direct benefits estoppel applied to one claim and then used intertwined claims estoppel for all the other claims in order to compel them all to arbitration. Now, we maintain that under Leonard Holmes, the court doesn't need to do that. It just needs to one find one arbitrable claim and can do it all. But Hayes uses both. And Hayes points out that if the facts alleged touch matters, have a significant relationship to are inextricably enmeshed with or factually intertwined with the contract with the arbitration agreement, then the claim is arbitrable. And that's at page 610 in the Hayes decision. And we would say that under the intertwined claims estoppel analysis, these claims are plainly arbitrable pursuant to equitable estoppel. Can you just go back to the agreement? So we've asked your opposing counsel how to interpret the parenthetical at the end. Again, let's from the beginning, any claim or dispute, whether in contract, court, et cetera, including the interpretation of this arbitration provision and the arbitrability of a claim or dispute between you and us or our employees, agents, successors or science, which arises out of or relates to your relates to the condition of this vehicle, this contract or any resulting transaction or relationship, peren, including any such relationship with third parties who do not sign this contract shall be decided by arbitration. What does the parenthetical mean, including any such relationship with third parties who do not sign this contract? I think that language is leaving room for doctrines like equitable estoppel and Arthur Anderson, for example, lists all the different state doctrines that allow a third party to a contract to enforce the contract. That provision says shall your or our discretion be resolved by arbitration? And who is your and ours under this contract? UNR is Mr. Knowles and the dealership. Right. But defined terms, right? Are defined terms. Yes, your honor. But the for instance, under Texas law, certainly people have raised the argument that if a contract says you are our in the same way that equitable estoppel is simply not available to them. And the Texas courts have said that's not how equitable estoppel works. Equitable estoppel something you're ready. You're reading on top of the contract so that you are our limiting language doesn't prevent equitable estoppel from applying. So what could you give us a site for that? That's the Meyer case, your honor. Two one one southwest third three oh two. Thank you. Let me go back to the the parenthetical. Does that parenthetical bring the third party GM. Into the provision. I think it leaves room for parties such as GM. We're not arguing that GM is, for instance, an employee, an agent or success. I get it, including any such relationship. I see. So you're saying relationship has to be one of S&E or employee or successor. I think it can include those. I don't think that language is limited to that. So including any such relationship with third parties who do not sign this contract, I think gives room for someone like GM to use a mechanism like equitable estoppel. And I think there are other provisions in the contract. My friend on the other side said repeatedly that for something like this to come into play first, Bruno Motors needed to be a party before you can even start adding third parties using this provision. And you can see further down the arbitration hearing shall be conducted in the federal district court in which you reside unless the seller creditor is a party to the claims of the dispute, in which case the hearing will be held where this contract was executed. That language implies seller creditor is the dealership. So it language implies that there will be arbitrable claims in which the dealership is not involved. All right. Because to some extent, stripping out words, any claim or dispute, including arbitrability relating to the condition of the vehicle can at the option of the parties be resolved by arbitration. And when you the parentheticals says, including any relationship with any such relationship with third parties. So you're saying any such relationship really has to relate back to employees, agents, successors or signs. I don't think it's limited to that, your honor. I think it's a broad term that recognizes that there might be a variety of third parties that the purchaser or the vehicle can form relationships with. Okay. And so including any relationship with the third party who doesn't sign shall at your election, among others, be resolved by arbitration. And they're not electing the plaintiffs. Bruner's not electing so who can somehow GM elect. Yes, your honor. And that's where the doctrine of equitable estoppel comes in. What does such mean in that apparent that such relationships, exactly, including any such relationship with parties who do not, what does that relate back to? I, I, I think it, it's, it's referring to, um, I think it's referring to it's at beginning. It's attaching to the, which arises out of clause. So I think it's relating to, if this is going to your credit application, the purchase or condition of the vehicle or their contract or any resulting transaction, that parenthetical is embedded within the, which arises clause. So I would say that the relationship would need to be tied to credit application purchase or condition of the vehicle or, um, this contract or any resulting transaction or relationship. So it is prior to that. Prior to that, the thing that arises out of or relates to the credit application and so on is any dispute between you and us or our employees, agents, successors and assigns, right? That is where the equitable estoppel doctrine comes in because as Texas law explains that equitable estoppel allows GM to step into the party and step into the shoes of, um, the party to the contract. So it would be us, the dealership. It stops the plaintiff from denying that GM has the same rights as the signatory to the contract. You said that Texas law is kind of all over the place with regard to the intertwined estoppel. You've got one case and then arguably is questioned by the Newman case. The fifth circuit made an eerie guess that the former case still applies. What is the status of Texas law with respect to intertwined estoppel right now? Yes, your honor. There is the eerie guess was made in the Hayes case by the fifth circuit in 2016. Yes. And it may, may be the wrong guess. It may be, but that's been 10 years and the Texas Supreme court has addressed equitable estoppel and it did correct. Um, there was a 2000 case, the Grigson case in which the fifth circuit suggested that concerted misconduct to stop was a thing in Texas law. And the Texas Supreme court came back afterwards in Meyer case and said, no, that's not a thing here. We have 10 years now since Hayes made his eerie gaze, eerie guess, the Texas Supreme court did not, has not, um, said that that was wrong. And in Jody James also cited, I thought the Newman case kind of second guess is the Hayes case. I did not read Newman that way, your honor. And Joe, I think the Jody James case, which is a, a recent Texas Supreme court case, it mentions intertwined claims as a thing that may possibly exist, but did not rule one way or the other, whether it was applicable in that situation. And that's the Texas Supreme court post Hayes declining to say intertwined claims, estoppel doesn't exist. Before, when we were talking about the estoppel doctrines, I thought you were saying that when Noel sues GM for breach of implied warranty, um, he's actually suing under the purchase agreement because there's got to be some contract to make it to a certain implied warranty claim. He's actually, even though he doesn't say it, he's actually suing under the purchase agreement. But I think I just heard you say that when he sues GM or when he sues, um, That GM is somehow stepping into the shoes of the seller. Right. Your honor. So when you're doing the equitable estoppel analysis, the question before the court is, are we going to a stop this plaintiff from denying that the non-signatory has the same rights under the contract and therefore can step into the shoes of the signatory? That's where the estoppel language comes from. So if you determine that the claims estoppel apply, that's the repercussion that GM steps into the shoes of the dealership and the plaintiff cannot stop GM from denying the arbitrability right. But you have to first go through the direct benefits estoppel analysis, which requires the, um, limited, the implied warranty is arising from the contract. And then the intertwined claims estoppel, which shows how all the, um, the other claims are all closely related to this, uh, contract transaction he had with it. So if he's, if, if this contract, um, impliedly exists between Knowles and GM, why isn't Knowles under the disclaimer, just prevented from asserting a claim for implied warranties? So if you look at it, it's on, uh, the joint appendix, page 146, the seller's disclaimer of warranties. It says at the bottom of that, that box, this provision does not affect any warranties covering the vehicle that the vehicle, the manufacturer may provide. We read that to mean that there was no contract has to very expressly seek to disclaim a warranty. And we did not read this as an express, an attempt to expressly disclaim a manufacturer warranty or a warranty that, that it will receive in order to receive repairs from the manufacturer. Is his warranty claim based on an independent warranty from GM? His express warranty claim is yes. Yes. But not the implied. The implied arises, uses the statute and the statute requires a purchase agreement with a merchant. Okay. Good. Okay. Thank you, Ron. Thank you. I will take the matter under advisement. Thank you for your excellent advocacy.